**PA'U and MUA FALEATUA, Plaintiffs**

**v.**

**TAUILIILI PEMERIKA and SINA KAISANO and family, Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 42-90

May 30, 1991

Before KRUSE, Chief Justice, TAUANU'U, Chief Associate Judge, BETHAM, Associate Judge.

Counsel: For Plaintiffs, Asaua Fuimaono
For Defendant Tauiliili Pemerika, Charles V. Ala'ilima

Since the early 1970s, plaintiffs and defendant Tauiliili have been adjacent landowners. Their respective lots were a part of a subdivision developed by Chief A.P. Lutali near the northwest corner of Tafuna Airport. The lots purchased by the parties roughly formed an inverted "L" which encompassed a vacant lot comprising 0.60 acres, more or less. It is this vacant lot which has given rise to this suit.

Tauiliili early proposed to plaintiffs that they should both utilize the vacant lot on the misguided presumption that the lot was landlocked and that, therefore, it was of no practical value to anyone else. Without first seeking Lutali's views on the matter, the parties did indeed make use of the vacant lot over the years. For Tauiliili's part, he planted various crops, put in a pig pen, and subsequently erected a small house, which he eventually made available for the use of defendant Sina Kaisano. He has maintained these uses to date; however, the small house was levelled by hurricane Ofa, and it has now been replaced by a FEMA structure[1] of a more permanent nature.[2] Defendant's use, on the other hand, had been more sporadic and apparently a lot less evident to Lutali, who was critical only of Tauiliili's self-help.

In 1987, plaintiffs approached Lutali to sell them the vacant lot. According to plaintiffs, they were told by Lutali to survey the lot, which they did after giving notice to the neighbors. Lutali corroborated this testimony.

Tauiliili, who was also present at the survey, admitted that he was told by the surveyor and others that the survey was being undertaken in view of a sale to plaintiffs. He further testified that he then went and

---

[1] A hurricane-relief home financed by the Federal Assistance Management Agency (FEMA).

[2] Tauiliili attempted to justify his unilateral decision to use the vacant lot by stating that the structures which he placed on the land, the pig pen and small house, were easily removable and not of a permanent nature. Chief Lutali also testified that when he confronted Tauiliili about his unauthorized use of the vacant lot, the latter responded that his use of the lot was merely provisional in nature.

saw Lutali to express his own interest in purchasing the land, since he had a home built on the lot; that Chief Lutali had told him that nothing had been finalized with the plaintiffs; and that Lutali had advised that he would get back to him.

In fact, Lutali concluded a sale agreement with plaintiffs, who at the outset deposited the sum of $16,000.00 towards the agreed selling price of $19,000.00. Although the remaining balance was informally agreed upon to be payable in the future by way of installments, Lutali did issue a deed immediately to plaintiffs. Consequently, the Territorial Registrar registered title in plaintiffs' name.

Notwithstanding, the vacant lot remained in Tauiliili's use and occupation. Plaintiffs apparently acquiesced in this continuing use and occupation until sometime in June 1990, when defendant Mua Faleatua discovered that Tauiliili had prepared boxing for the foundation of some new structure on the lot.[3] Mrs. Faleatua testified that after making this discovery, she went to the Office of Samoan Affairs the following day seeking to put a stop to Tauiliili's construction. She put the date at June 24, 1990, as she departed the island that very evening to attend a family fa'alavelave in Honolulu. As the result of her visit, the Office of Samoan Affairs, by letter dated June 26, 1990, notified both parties that a meeting at the Office of Samoan Affairs had been set for July 11, 1990. The letter also requested Tauiliili to cease construction in the meantime.

As it turned out, the meeting did not take place, as it was postponed owing to a conflict with the scheduling of a church conference in Apia to which both Tauiliili and Mrs. Faleatua were delegates. At the same time, the construction, as Mrs. Faleatua discovered while on the return flight from the church conference, had never abated in the interim. From the air, she noticed that the construction project, which she had assumed had been stopped, appeared to be roofed and nearly completed. She testified that she was surprised at seeing this and that she again visited the Office of Samoan Affairs the following day and there produced her deed to the disputed land. She stated that she also confronted Tauiliili with a copy of the deed immediately before filing

---

[3] After hurricane Ofa had destroyed what we have referred to as the "small house," Tauiliili successfully applied to FEMA for hurricane disaster relief. He was awarded a grant of $7,400.00 to rebuild.

suit, but apparently to no avail. She and her husband Pa'u Faleatua then filed suit seeking, among other things, defendants' eviction.

The defendants do not contest plaintiffs' ownership of the lot. However, Tauiliili counterclaims for equitable relief, contending that he is entitled to be compensated by plaintiffs for the value of improvements he has made to land. Such relief, however, is available only to an occupant who has made improvements in "good faith," *Fonoti v. Fagaima*, 5 A.S.R.2d 158 (1987); *Roberts v. Sesepasara*, 8 A.S.R.2d 124 (1988), and whose possession must have been under some color or claim of title. *See* 42 C.J.S. *Improvements* § 7(a), at 432 (1944 & supp. 1985). In support of his claim, Tauiliili testified that he had always believed that the vacant lot belonged to Lutali and that he had built the FEMA home after first securing Lutali's permission to build. Additionally, he claims that the Faleatuas had never told him about their purchase of the land and that Lutali had led him to believe that the lot was still available for sale, since the Faleatuas had not completely paid off the balance of the purchase monies.

The counterclaim is fraught with a number of factual contradictions against any claim to possession under color or claim of title. First, Lutali emphatically denied offering Tauiliili anything in the way of permission; the land was simply not his to give to Tauiliili. Second, the sale of the vacant lot to the Faleatuas was concluded in the year 1987, however, hurricane Ofa, the causal reason for FEMA assistance, did not occur until February 1990. In these circumstances, the alleged permission from Lutali to build a FEMA house on property which Lutali had three years earlier conveyed to a third party is highly suspect. Third, and perhaps more telling, is the fact that Tauiliili had (mis)represented in his application for FEMA assistance that he, not Chief Lutali, was owner of the building site. This fact is altogether inconsistent with his claim to Lutali's ownership and, hence, permission.

Finally, Tauiliili was put on notice a number of times as to the existence of a competing claim to the vacant lot, although he nonetheless took it upon himself to build upon it, knowing full well that he had no right to such use and occupation. Ordinarily, an improver's knowledge of an adverse claim vitiates a claim to "good faith" for the purposes of receiving compensation. *Tulisua v. Olo*, 8 A.S.R.2d 169 (1988). In addition, an improver may be charged with actual notice

where there is brought home to him notice of some fact or circumstance that would put a man of ordinary

prudence to such an inquiry as would, if honestly
followed, lead to the knowledge of the adverse title.

42 C.J.S. *Improvements* § 7(b)(4)(b)(aa), at 436. Here, Tauiliili was put on notice of plaintiffs' adverse claim at the time of survey in 1987. He was put on notice when contacted by the Office of Samoan Affairs on or about June 22, 1991. He was put on notice when Mrs. Faleatua confronted him with her deed immediately before filing suit. He was put on notice when suit was filed. Yet the exhibits presented by plaintiff to substantiate the value of his investment showed receipts for building supplies acquired between the months of June and October 1990. In these circumstances, Tauiliili can hardly be said to be a "good-faith" improver for purposes of equitable relief. The counterclaim is dismissed. The petition for eviction is granted.

Tauiliili may, however, remove his improvements. Since this must inevitably involve economic waste in regard to the FEMA house, the Court strongly urges the parties to seriously attempt to negotiate a sale agreement of the said house. If such an agreement cannot be achieved, then Tauiliili shall remove the house and any other property of his on the land within 60 days or suffer such property to become a part of the realty.

Judgment accordingly. It is so ordered.